IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MATTHEW SHAPER, #298782,       )
                                     )
        Plaintiff,           )
                                     )
     v.                    )     CASE NO. 2:16-CV-370-WHA-WC
                                     )
LEON FORNISS, et al.,           )
                                     )
       Defendants.      )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

May 23, 2016, by Matthew Shaper, an indigent state inmate, challenging actions which

occurred on December 8, 2015, at Elmore Correctional Facility. (Doc. 1 at p. 2). Later,

he filed an amendment to his complaint challenging actions that took place on January 26,

2016, at Elmore Correctional Facility. (Doc. 6 at p. 2). Specifically, Shaper alleges that

the defendants acted with deliberate indifference when they failed to protect him from an

attack by black inmates on December 8, 2015, and thereafter delayed his access to medical

treatment until December 14, 2015, when a medical body chart was performed. (Doc. 1

at pp. 5–7). He also alleges that defendants retaliated against him for filing this § 1983

action when certain correctional officer defendants assisted inmates with breaking into his

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this
court in the docketing process.

personal locker on January 26, 2016.    (Doc. 6 at pp. 2-3).  He further alleges that the defendants failed to investigate these events.  (Doc. 1 at p. 7; Doc. 6 at p. 3).  The named defendants are Warden Leon Forniss, the Alabama Department of Corrections, Sgt. Oliver, C.O. McDonald, C.O. Green, Lt. Burk, C.O. Rogers, C.O Lewis, Captain McKee, and Captain Smiley. Shaper seeks monetary damages and injunctive relief in this cause of action.

The defendants filed a special report (Doc. 27, Exs. 1-10)[2] and a supplemental special report (Doc. 33, Exs. 1-8), which included relevant evidentiary materials in support of these reports, specifically, affidavits, prison documents, and medical records addressing the claims presented by Shaper. At the direction of the court, the defendants also filed additional affidavits.  (Docs. 30, Ex. 1; 50, Exs. 1-5; 68, Exs. 1-3; 72, Exs. 1-2; 83, Exs. 1-3).   In these documents, the defendants deny they acted with deliberate indifference to Shaper's safety or medical needs, deny they participated in the actions that form Plaintiff's retaliation claims, and deny they failed to investigate these events.  At the direction of the court, the defendants also filed video recordings under seal solely for the court's *in camera* review.  (Docs. 86, 88, 89, 90).  These video exhibits include video of activities occurring in the dorm on January 26, 2016, (Doc. 90; Ex. 1) and video of the plaintiff in the shift office on December 8, 2015.  (Doc. 90; Ex. 2).  The court has reviewed these videos.

---

[2] On October 18, 2016, the plaintiff filed a response to the defendants' answer and special report. (Doc. 35).

After reviewing the special reports and exhibits, the court issued an order on February 17, 2017, requiring Shaper to file a response to the defendants' special reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. These orders specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 52 at 2–3). Shaper filed a response to this order. (Doc. 60).

Pursuant to the directives of the order entered on February 17, 2017, the court now treats the defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Rule 56(a), Fed.R.Civ. P. ("The

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24. The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

---

[3]Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues

of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" that would be admissible at trial supporting each essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted). Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the

plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue

affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24. A court may grant summary judgment where the pleadings, evidentiary materials, and affidavits before the court show there is no genuine dispute as to a requisite material fact. *Id*. To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Shaper's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Shaper has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. FACTS

In his complaint, the plaintiff alleges that on December 8, 2015, he "was beaten and robbed at knife point in A-2 dormitory by several black inmates, and his personal locker box was looted during this robbery." (Doc. 1 at p. 5). He further alleges that "[f]ollowing the plaintiff's being beaten and robbed . . . plaintiff immediately proceeded to the shift office and reported this incident." (Doc. 1 at p. 6). He admits that a medical body chart was performed on December 14, 2015, but complains that was "6 days after this assault/armed robbery initially occurred." (Doc. 1 at p. 7). He also claims that "[n]o efforts have been made by these defendants to apprehend or even investigate this incident." (Doc. 1 at. p 7). The plaintiff includes no factual support for these statements other than his bare bones pleadings in the complaint.

In his amendment to the complaint, the plaintiff alleges that on January 26, 2016, in A2 dorm "several black inmates . . . attempted to rob the plaintiff's locker-box by trying to kick the box off its rails and trying to break the lock." (Doc. 6 at. p. 2). He further alleges that "Corr. Officers Rogers, Green, and Lewis witnessed these inmates attempting to break into the plaintiff's locker, and C.O. Rogers assisted these inmates by using his baton to break the lock off of the plaintiff's locker and allowed them to loot the plaintiff's property while C.O. Green and C.O. Lewis stood by and watched." (Doc. 6 at p. 2). He claims that "the officer assisted robbery on January 26, 2016, was in retaliation for plaintiff's pending § 1983 filing." (Doc. 6 at p. 2). Plaintiff also attached to the amendment written statements from two other inmates which stated that correctional officers Lewis, Green, and Rogers either participated in or watched the break-in of Plaintiff's locker on January 26, 2016. (Doc. 6 at pp. 5 and 6).

The defendants, in response to this court's order, filed two video recordings –1) Ex. CC video of activities occurring in dorm A-2 on January 26, 2016; 2) Ex. DD video of the plaintiff in the shift office on December 8, 2015. (Doc. 89-1). Pursuant to the order of this court, the defendants allowed the plaintiff to watch both of these videos. (Doc. 89-1). The plaintiff has filed nothing with the court to dispute the facts presented in the videos.

The court has also carefully watched these videos multiple times. Based on its own review of this evidence, the court finds that the plaintiff had no visible injuries when he presented to the shift office on December 8, 2015, immediately following the assault/robbery. Also, the court finds that while the video of dorm A-2 clearly shows an

10

attempted break-in of the plaintiff's locker, the video confirms that no correctional officers participated in the break in or stood by to watch.  Rather, the video shows that the perpetrators of the break-in, the look-outs, and the onlookers were prisoners. In fact, the video shows that when correctional officers walked through the dorm area during the time of the attempted break-in, the break-in attempts ceased.

## IV.  ABSOLUTE IMMUNITY

To the extent Shaper requests monetary damages from the defendants in their official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held:

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of

> law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the Court will now address the plaintiff's claims brought against defendants in their individual capacities.

## V. DISCUSSION

### A.  Deliberate Indifference

1.  **Standard of Review.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth

Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County*, *Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state

a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989). Correctional personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment"). In determining whether a delay in medical treatment constituted deliberate indifference, the court considers the seriousness of the medical need, whether the delay worsened the medical condition, and the reason for the delay. *See Goebert v. Lee County, Fla.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" which establishes the

14

detrimental effect caused by the delay to succeed on his claim. *Surber v. Dixie County Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize

the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*,

475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each

individual Defendant must be judged separately and on the basis of what that person [knew

at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere

possibility before a [state official's] failure to act can constitute deliberate indifference."

*Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and

citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does

not justify liability under section 1983." *Id*.  Even where a prison official perceives a

serious risk of harm to an inmate, the official "may still prevail if he responded reasonably

to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d

693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).  In sum, prison

officials cannot be held liable under the Eighth Amendment unless there is an objectively

substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm, and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

> 2. **Failure to Protect.** To survive the properly supported motion for summary judgment filed by the defendants, Shaper must first demonstrate an objectively substantial risk of serious harm existed to him from black inmates and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Shaper must then satisfy the subjective component. This requires Shaper to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* (internal citation omitted).

> > To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id.* at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original). Based upon the court's careful review of all the evidence, the court concludes that the plaintiff

fails to even allege, much less offer any proof, that the defendants were aware he was at risk for robbery and assault on December 8, 2015, by black inmates.  Accordingly, the Court concludes that summary judgment is due to be granted in favor of the defendants on the claim alleging they acted with deliberate indifference to Shaper's safety.

### 3. **Delay in Medical Treatment**.

Shaper alleges defendants acted with deliberate indifference to his medical needs by delaying for six days to perform a medical body chart after the December 8, 2015, assault.  However, this court's careful review of the video evidence from December 8, 2015, when the plaintiff reported to the shift office, showed no visible injuries to the plaintiff for which he should have been referred for medical treatment. (Doc. 90; Ex. 2).  Moreover, defendants deny that they were aware of the plaintiff's injuries.  (Doc. 72-1, 72-2, 72-3).  The United States Supreme Court has acknowledged a "wrinkle" in cases where the record contains video evidence.  *Scott,* 550 U.S. at 378.  Where, as here, a plaintiff's "version of events is so utterly discredited by the record that no reasonable jury could . . . believe[] him[,]" the Supreme Court admonished that the lower court addressing the claims "should not [rely] on such visible fiction [but] should  . . . view[] the facts in the light depicted by the videotape."  *Id.* at 380-81.  Because the plaintiff's allegations are contradicted by the record in this case, including the video recordings, no reasonable jury could believe his story.  Accordingly, the court concludes that the record is devoid of evidence—significantly probative or otherwise—showing that these defendants acted with deliberate indifference in obtaining medical treatment for Shaper.  For the foregoing

reasons, summary judgment is due to be granted in favor of defendants on the plaintiff's claim of deliberate indifference due to a delay in medical treatment.

### B.   Retaliation

The plaintiff alleges that the "officer assisted robbery on January 26, 2016 was in retaliation of Plaintiff's pending §1983 filing."  (Doc. 6 at p. 7).  Plaintiff's complaint in this action was filed on May 23, 2016.  He affirmatively states in this pleading that he had begun no other lawsuits in state or federal court dealing with the facts of this action.  (Doc. 1 at p. 1).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).   With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this

conduct ... was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576.  Merely alleging the ultimate fact of retaliation, however, is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166.    Taking the plaintiff's allegations as true, the court concludes that he fails to state a prima facie case of retaliation because he fails to allege sufficient facts to demonstrate a prima facie case of causation.  Specifically, the plaintiff alleges that the "officer assisted robbery on January 26, 2016 was in retaliation of Plaintiff's pending §1983 filing."  (Doc. 6 at p. 7).  Plaintiff's complaint in this action was filed on May 23, 2016, and according to the plaintiff is the only action he has filed in federal or state court dealing with these facts.  (Doc. 1 at p. 1).  Because the instant §1983 action was filed *after* the alleged retaliatory act committed by defendants, the instant action cannot serve as a basis for the alleged retaliation.  Thus, there is no causal link, and the retaliation claim fails. *Bennett,* 423 F.3d at 1250, 1254.  Moreover, even assuming Plaintiff alleges another basis for the alleged retaliation, the court concludes that the video evidence clearly demonstrates the plaintiff's allegations of the officers' involvement in the attempted robbery on any level are unsubstantiated. *Scott,* 550 U.S. at 380-81.  Accordingly, the court concludes summary judgment is due to be granted in favor of the defendants on the plaintiff's retaliation claim.

### C.  Failure to Investigate

AIt is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985).  Here, Plaintiff=s conclusory

allegations that the defendants failed to adequately investigate the assault and robbery fails to implicate any constitutional right to which he is entitled. The failure to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation. Inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials. *See DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."*). Thus, the court concludes that the conduct about which Plaintiff complains does not rise to the level of a constitutional violation and that summary judgment is due to be granted on Plaintiff's claim for defendants' failure to investigate.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **May 17, 2019**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 3rd day of May, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE